# BRYAN *v.* UNITED STATES

No. 96–8422.   Argued March 31, 1998—Decided June 15, 1998

STEVENS, J., delivered the opinion of the Court, in which O'CONNOR, KENNEDY, SOUTER, THOMAS, and BREYER, JJ., joined. SOUTER, J., filed a concurring opinion, *post*, p. 200. SCALIA, J., filed a dissenting opinion, in which REHNQUIST, C. J., and GINSBURG, J., joined, *post*, p. 200.

*Roger Bennet Adler* argued the cause for petitioner. With him on the briefs was *Martin B. Adelman.*

*Kent L. Jones* argued the cause for the United States. With him on the brief were *Solicitor General Waxman, Acting Assistant Attorney General Keeney, Deputy Solicitor General Dreeben,* and *John F. De Pue.*\*

JUSTICE STEVENS delivered the opinion of the Court.

Petitioner was convicted of "willfully" dealing in firearms without a federal license. The question presented is whether the term "willfully" in 18 U. S. C. § 924(a)(1)(D) requires proof that the defendant knew that his conduct was unlawful, or whether it also requires proof that he knew of the federal licensing requirement.

I

In 1968 Congress enacted the Omnibus Crime Control and Safe Streets Act. 82 Stat. 197–239. In Title IV of that Act Congress made findings concerning the impact of the traffic in firearms on the prevalence of lawlessness and violent crime in the United States[1] and amended the Criminal Code

---

\*Briefs of *amici curiae* urging reversal were filed for the Gun Owners Foundation by *James H. Jeffries III* and *James H. Wentzel;* and for the National Association of Criminal Defense Lawyers by *Barbara Bergman* and *Stephen P. Halbrook.*

[1] "Sec. 901. (a) The Congress hereby finds and declares—

"(1) that there is a widespread traffic in firearms moving in or otherwise affecting interstate or foreign commerce, and that the existing Federal controls over such traffic do not adequately enable the States to control this traffic within their own borders through the exercise of their police power;

"(2) that the ease with which any person can acquire firearms other than a rifle or shotgun (including criminals, juveniles without the knowledge or consent of their parents or guardians, narcotics addicts, mental defectives, armed groups who would supplant the functions of duly constituted public authorities, and others whose possession of such weapons is similarly contrary to the public interest) is a significant factor in the prevalence of lawlessness and violent crime in the United States;

"(3) that only through adequate Federal control over interstate and foreign commerce in these weapons, and over all persons engaging in the businesses of importing, manufacturing, or dealing in them, can this grave

to include detailed provisions regulating the use and sale of firearms. As amended, 18 U. S. C. § 922 defined a number of "unlawful acts"; subsection (a)(1) made it unlawful for any person except a licensed dealer to engage in the business of dealing in firearms.[2] Section 923 established the federal licensing program and repeated the prohibition against dealing in firearms without a license, and § 924 specified the penalties for violating "any provision of this chapter." Read literally, § 924 authorized the imposition of a fine of up to $5,000 or a prison sentence of not more than five years, "or both," on any person who dealt in firearms without a license even if that person believed that he or she was acting lawfully.[3] As enacted in 1968, §§ 922(a)(1) and 924 omitted an express scienter requirement and therefore arguably imposed strict criminal liability on every unlicensed dealer in firearms. The 1968 Act also omitted any definition of the term "engaged in the business" even though that conduct was an element of the unlawful act prohibited by § 922(a)(1).

In 1986 Congress enacted the Firearms Owners' Protection Act (FOPA), in part, to cure these omissions. The findings in that statute explained that additional legislation was necessary to protect law-abiding citizens with respect to the acquisition, possession, or use of firearms for lawful pur-

---

problem be properly dealt with, and effective State and local regulation of this traffic be made possible . . . ." 82 Stat. 225.

[2] 82 Stat. 228. The current version of this provision, which is substantially the same as the 1968 version, is codified at 18 U. S. C. § 922(a)(1)(A). It states:

"(a) It shall be unlawful—

"(1) for any person—

"(A) except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce."

[3] "§ 924. Penalties

"(a) Whoever violates any provision of this chapter . . . shall be fined not more than $5,000 or imprisoned not more than five years, or both." 82 Stat. 233.

poses.[4]  FOPA therefore amended § 921 to include a definition of the term "engaged in the business,"[5] and amended § 924 to add a scienter requirement as a condition to the imposition of penalties for most of the unlawful acts defined in § 922.  For three categories of offenses the intent required is that the defendant acted "knowingly"; for the fourth category, which includes "any other provision of this chapter," the required intent is that the defendant acted "willfully."[6]

---

[4] "The Congress finds that—

.          .          .          .

"(b)(2) additional legislation is required to reaffirm the intent of the Congress, as expressed in section 101 of the Gun Control Act of 1968, that 'it is not the purpose of this title to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms appropriate to the purpose of hunting, trapshooting, target shooting, personal protection, or any other lawful activity, and that this title is not intended to discourage or eliminate the private ownership or use of firearms by law-abiding citizens for lawful purposes.'"   100 Stat. 449.

[5] "Section 921 of title 18, United States Code, is amended—

.          .          .          .

"(21) The term 'engaged in the business' means—

.          .          .          .

"(C) as applied to a dealer in firearms, as defined in section 921 (a)(11)(A), a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms . . . ."   100 Stat. 449–450.

[6] Title 18 U. S. C. § 924(a)(1) currently provides:

"Except as otherwise provided in this subsection, subsection (b), (c), or (f) of this section, or in section 929, whoever—

"(A) knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter or in applying for any license or exemption or relief from disability under the provisions of this chapter;

"(B) knowingly violates subsection (a)(4), (f), (k), (r), (v), or (w) of section 922;

The § 922(a)(1)(A)[7] offense at issue in this case is an "other provision" in the "willfully" category.

## II

The jury having found petitioner guilty, we accept the Government's version of the evidence. That evidence proved that petitioner did not have a federal license to deal in firearms; that he used so-called "straw purchasers" in Ohio to acquire pistols that he could not have purchased himself; that the straw purchasers made false statements when purchasing the guns; that petitioner assured the straw purchasers that he would file the serial numbers off the guns; and that he resold the guns on Brooklyn street corners known for drug dealing. The evidence was unquestionably adequate to prove that petitioner was dealing in firearms, and that he knew that his conduct was unlawful.[8] There was, however, no evidence that he was aware of the federal law that prohibits dealing in firearms without a federal license.

Petitioner was charged with a conspiracy to violate 18 U. S. C. § 922(a)(1)(A), by willfully engaging in the business of dealing in firearms, and with a substantive violation of that provision.[9] After the close of evidence, petitioner requested that the trial judge instruct the jury that petitioner could be convicted only if he knew of the federal

---

"(C) knowingly imports or brings into the United States or any possession thereof any firearm or ammunition in violation of section 922(l); or

"(D) willfully violates any other provision of this chapter,

"shall be fined under this title, imprisoned not more than five years, or both."

[7] See n. 2, supra.

[8] Why else would he make use of straw purchasers and assure them that he would shave the serial numbers off the guns? Moreover, the street corner sales are not consistent with a good-faith belief in the legality of the enterprise.

[9] Although the prohibition against unlicensed dealing in firearms is set forth in § 922, see n. 2, supra, the criminal sanction is set forth in § 924(a)(1), see n. 6, supra.

licensing requirement,[10] but the judge rejected this request. Instead, the trial judge gave this explanation of the term "willfully":

> "A person acts willfully if he acts intentionally and purposely and with the intent to do something the law forbids, that is, with the bad purpose to disobey or to disregard the law. Now, the person need not be aware of the specific law or rule that his conduct may be violating. But he must act with the intent to do something that the law forbids."[11]

Petitioner was found guilty on both counts. On appeal he argued that the evidence was insufficient because there was no proof that he had knowledge of the federal licensing requirement, and that the trial judge had erred by failing to instruct the jury that such knowledge was an essential element of the offense. The Court of Appeals affirmed. 122 F. 3d 90 (CA2 1997). It concluded that the instructions were proper and that the Government had elicited "ample proof" that petitioner had acted willfully. App. 22.

Because the Eleventh Circuit has held that it is necessary for the Government to prove that the defendant acted with knowledge of the licensing requirement, *United States* v. *Sanchez-Corcino*, 85 F. 3d 549, 553–554 (1996), we granted certiorari to resolve the conflict. 522 U. S. 1024 (1997).

---

[10] "KNOWLEDGE OF THE LAW

"The Federal Firearms Statute which the Defendant is charged with, conspiracy to violate and with allegedly violated [sic], is a specific intent statute. You must accordingly find, beyond a reasonable doubt, that Defendant at all relevant times charged, acted with the knowledge that it was unlawful to engage in the business of firearms distribution lawfully purchased by a legally permissible transferee or gun purchaser.

. . . . . .

"[Y]ou must be persuaded that with the actual knowledge of the federal firearms licensing laws Defendant acted in knowing and intentional violation of them." App. 17 (citing *Ratzlaf* v. *United States*, 510 U. S. 135 (1994)).

[11] App. 18–19.

## III

The word "willfully" is sometimes said to be "a word of many meanings" whose construction is often dependent on the context in which it appears. See, *e. g., Spies* v. *United States,* 317 U. S. 492, 497 (1943). Most obviously it differentiates between deliberate and unwitting conduct, but in the criminal law it also typically refers to a culpable state of mind. As we explained in *United States* v. *Murdock,* 290 U. S. 389 (1933), a variety of phrases have been used to describe that concept.[12] As a general matter, when used in the criminal context, a "willful" act is one undertaken with a "bad purpose."[13] In other words, in order to establish a

---

[12] "The word often denotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental. But when used in a criminal statute it generally means an act done with a bad purpose (*Felton* v. *United States,* 96 U. S. 699; *Potter* v. *United States,* 155 U. S. 438; *Spurr* v. *United States,* 174 U. S. 728); without justifiable excuse (*Felton* v. *United States, supra; Williams* v. *People,* 26 Colo. 272; 57 Pac. 701; *People* v. *Jewell,* 138 Mich 620; 101 N. W. 835; *St. Louis, I. M. & S. Ry. Co.* v. *Batesville & W. Tel. Co.,* 80 Ark. 499; 97 S. W. 660; *Clay* v. *State,* 52 Tex. Cr. 555; 107 S. W. 1129); stubbornly, obstinately, perversely, *Wales* v. *Miner,* 89 Ind. 118, 127; *Lynch* v. *Commonwealth,* 131 Va. 762; 109 S. E. 427; *Claus* v. *Chicago Gt. W. Ry. Co.,* 136 Iowa 7; 111 N. W. 15; *State* v. *Harwell,* 129 N. C. 550; 40 S. E. 48. The word is also employed to characterize a thing done without ground for believing it is lawful (*Roby* v. *Newton,* 121 Ga. 679; 49 S. E. 694), or conduct marked by careless disregard whether or not one has the right so to act, *United States* v. *Philadelphia & R. Ry. Co.,* 223 Fed. 207, 210; *State* v. *Savre,* 129 Iowa 122; 105 N. W. 387; *State* v. *Morgan,* 136 N. C. 628; 48 S. E. 670." 290 U. S., at 394–395.

[13] See, *e. g., Heikkinen* v. *United States,* 355 U. S. 273, 279 (1958) ("There can be no *willful* failure by a deportee, in the sense of § 20(c), to apply to, and identify, a country willing to receive him in the absence of evidence . . . of a 'bad purpose' or '[non-]justifiable excuse,' or the like. . . . [I]t cannot be said that he acted 'willfully'—*i. e.,* with a 'bad purpose' or without 'justifiable excuse'"); *United States* v. *Murdock,* 290 U. S. 389, 394 (1933) ("[W]hen used in a criminal statute [willfully] generally means an act done with a bad purpose"); *Felton* v. *United States,* 96 U. S. 699, 702 (1878) ("Doing or omitting to do a thing knowingly and wilfully, implies not only a knowledge of the thing, but a determination with a bad

"willful" violation of a statute, "the Government must prove that the defendant acted with knowledge that his conduct was unlawful." *Ratzlaf* v. *United States,* 510 U. S. 135, 137 (1994).

Petitioner argues that a more particularized showing is required in this case for two principal reasons. First, he argues that the fact that Congress used the adverb "knowingly" to authorize punishment of three categories of acts made unlawful by § 922 and the word "willfully" when it referred to unlicensed dealing in firearms demonstrates that the Government must shoulder a special burden in cases like this. This argument is not persuasive because the term "knowingly" does not necessarily have any reference to a culpable state of mind or to knowledge of the law. As Justice Jackson correctly observed, "the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law." [14] Thus, in *United*

---

intent to do it or to omit doing it. 'The word "wilfully,"' says Chief Justice Shaw, 'in the ordinary sense in which it is used in statutes, means not merely "voluntarily," but with a bad purpose.' 20 Pick. (Mass.) 220. 'It is frequently understood,' says Bishop, 'as signifying an evil intent without justifiable excuse.' Crim. Law, vol. i. sect. 428"); 1 L. Sand, J. Siffert, W. Loughlin, & S. Reiss, Modern Federal Jury Instructions ¶ 3A.01, p. 3A-18 (1997) (" 'Willfully' means to act with knowledge that one's conduct is unlawful and with the intent to do something the law forbids, that is to say with the bad purpose to disobey or to disregard the law").

[14] In his opinion dissenting from the Court's decision upholding the constitutionality of a statute authorizing punishment for the knowing violation of an Interstate Commerce regulation, Justice Jackson wrote:

"It is further suggested that a defendant is protected against indefiniteness because conviction is authorized only for knowing violations. The argument seems to be that the jury can find that defendant knowingly violated the regulation only if it finds that it knew the meaning of the regulation he was accused of violating. With the exception of *Screws* v. *United States,* 325 U. S. 91, which rests on a very particularized basis, the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law. I do not suppose the Court intends to suggest that if petitioner knew nothing of the existence

*States* v. *Bailey,* 444 U. S. 394 (1980), we held that the prosecution fulfills its burden of proving a knowing violation of the escape statute "if it demonstrates that an escapee knew his actions would result in his leaving physical confinement without permission." *Id.,* at 408. And in *Staples* v. *United States,* 511 U. S. 600 (1994), we held that a charge that the defendant's possession of an unregistered machinegun was unlawful required proof "that he knew the weapon he possessed had the characteristics that brought it within the statutory definition of a machinegun." *Id.,* at 602. It was not, however, necessary to prove that the defendant knew that his possession was unlawful. See *Rogers* v. *United States,* 522 U. S. 252, 254–255 (1998) (plurality opinion). Thus, unless the text of the statute dictates a different result,[15] the term "knowingly" merely requires proof of knowledge of the facts that constitute the offense.

With respect to the three categories of conduct that are made punishable by § 924 if performed "knowingly," the background presumption that every citizen knows the law makes it unnecessary to adduce specific evidence to prove that "an evil-meaning mind" directed the "evil-doing hand."[16] More is required, however, with respect to the conduct in the fourth category that is only criminal when done "willfully." The jury must find that the defendant acted with an evil-meaning mind, that is to say, that he acted with knowledge that his conduct was unlawful.

Petitioner next argues that we must read § 924(a)(1)(D) to require knowledge of the law because of our inter-

---

of such a regulation its ignorance would constitute a defense." *Boyce Motor Lines, Inc.* v. *United States,* 342 U. S. 337, 345 (1952).

[15] *Liparota* v. *United States,* 471 U. S. 419 (1985), was such a case. We there concluded that both the term "knowing" in 7 U. S. C. § 2024(c) and the term "knowingly" in § 2024(b)(1) literally referred to knowledge of the law as well as knowledge of the relevant facts. See *id.,* at 428–430.

[16] Justice Jackson's translation of the terms *mens rea* and *actus reus* is found in his opinion for the Court in *Morissette* v. *United States,* 342 U. S. 246, 251 (1952).

pretation of "willfully" in two other contexts. In certain cases involving willful violations of the tax laws, we have concluded that the jury must find that the defendant was aware of the specific provision of the tax code that he was charged with violating. See, *e. g., Cheek* v. *United States,* 498 U. S. 192, 201 (1991).[17] Similarly, in order to satisfy a willful violation in *Ratzlaf,* we concluded that the jury had to find that the defendant knew that his structuring of cash transactions to avoid a reporting requirement was unlawful. See 510 U. S., at 138, 149. Those cases, however, are readily distinguishable. Both the tax cases[18] and *Ratzlaf*[19] involved highly technical statutes that presented the danger of ensnaring individuals engaged in apparently innocent conduct.[20] As a result, we held that these statutes

---

[17] Even in tax cases, we have not always required this heightened *mens rea.* In *United States* v. *Pomponio,* 429 U. S. 10 (1976) *(per curiam),* for example, the jury was instructed that a willful act is one done "with [the] bad purpose either to disobey or to disregard the law." *Id.,* at 11. We approved of this instruction, concluding that "[t]he trial judge . . . adequately instructed the jury on willfulness." *Id.,* at 13.

[18] As we stated in *Cheek* v. *United States,* 498 U. S. 192, 199–200 (1991):

"The proliferation of statutes and regulations has sometimes made it difficult for the average citizen to know and comprehend the extent of the duties and obligations imposed by the tax laws. Congress has accordingly softened the impact of the common-law presumption by making specific intent to violate the law an element of certain federal criminal tax offenses. Thus, the Court almost 60 years ago interpreted the statutory term 'willfully' as used in the federal criminal tax statutes as carving out an exception to the traditional rule [that every person is presumed to know the law]. This special treatment of criminal tax offenses is largely due to the complexity of the tax laws."

[19] See *Bates* v. *United States,* 522 U. S. 23, 31, n. 6 (1997) (noting that *Ratzlaf's* holding was based on the "particular statutory context of currency structuring"); *Ratzlaf,* 510 U. S., at 149 (Court's holding based on "particular context[t]" of currency structuring statute).

[20] *Id.,* at 144–145 ("[C]urrency structuring is not inevitably nefarious. . . . Nor is a person who structures a currency transaction invariably motivated by a desire to keep the Government in the dark"; Government's construction of the statute would criminalize apparently innocent activity); *Cheek,* 498 U. S., at 205 ("[I]n 'our complex tax system, uncertainty

"carv[e] out an exception to the traditional rule" that ignorance of the law is no excuse[21] and require that the defendant have knowledge of the law.[22]  The danger of convicting individuals engaged in apparently innocent activity that motivated our decisions in the tax cases and *Ratzlaf* is not present here because the jury found that this petitioner knew that his conduct was unlawful.[23]

---

often arises even among taxpayers who earnestly wish to follow the law,' and '"[i]t is not the purpose of the law to penalize frank difference of opinion or innocent errors made despite the exercise of reasonable care."' *United States* v. *Bishop,* 412 U. S. 346, 360–361 (1973) (quoting *Spies* v. *United States,* 317 U. S. 492, 496 (1943))"); *Murdock,* 290 U. S., at 396 ("Congress did not intend that a person, by reason of a bona fide misunderstanding as to his liability for the tax, as to his duty to make a return, or as to the adequacy of the records he maintained, should become a criminal by his mere failure to measure up to the prescribed standard of conduct").

[21] *Cheek,* 498 U. S., at 200; see also *Ratzlaf,* 510 U. S., at 149 (noting the "venerable principle that ignorance of the law generally is no defense to a criminal charge," but concluding that Congress intended otherwise in the "particular contex[t]" of the currency structuring statute).

[22] Even before *Ratzlaf* was decided, then-Chief Judge Breyer explained why there was a need for specificity under those statutes that is inapplicable when there is no danger of conviction of a defendant with an innocent state of mind.  He wrote:

"I believe that criminal prosecutions for 'currency law' violations, of the sort at issue here, very much resemble criminal prosecutions for tax law violations.  *Compare* 26 U. S. C. §§ 6050I, 7203 *with* 31 U. S. C. §§ 5322, 5324.  Both sets of laws are technical; and both sets of laws sometimes criminalize conduct that would not strike an ordinary citizen as immoral or likely unlawful.  Thus, both sets of laws may lead to the unfair result of criminally prosecuting individuals who subjectively and honestly believe they have not acted criminally.  *Cheek* v. *United States,* 498 U. S. 192 . . . (1991), sets forth a legal standard that, by requiring proof that the defendant was subjectively aware of the duty at issue, would avoid such unfair results." *United States* v. *Aversa,* 984 F. 2d 493, 502 (CA1 1993) (concurring opinion).

He therefore concluded that the "same standards should apply in both" the tax cases and in cases such as *Ratzlaf.* 984 F. 2d, at 503.

[23] Moreover, requiring only knowledge that the conduct is unlawful is fully consistent with the purpose of FOPA, as FOPA was enacted to protect law-abiding citizens who might inadvertently violate the law.  See

Thus, the willfulness requirement of § 924(a)(1)(D) does not carve out an exception to the traditional rule that ignorance of the law is no excuse; knowledge that the conduct is unlawful is all that is required.

## IV

Petitioner advances a number of additional arguments based on his reading of congressional intent. Petitioner first points to the legislative history of FOPA, but that history is too ambiguous to offer petitioner much assistance. Petitioner's main support lies in statements made by opponents of the bill.[24] As we have stated, however, "[t]he fears and doubts of the opposition are no authoritative guide to the construction of legislation." *Schwegmann Brothers* v. *Calvert Distillers Corp.*, 341 U. S. 384, 394 (1951). "In their zeal to defeat a bill, they understandably tend to overstate its reach." *NLRB* v. *Fruit Packers*, 377 U. S. 58, 66 (1964).[25]

Petitioner next argues that, at the time FOPA was passed, the "willfulness" requirements in other subsections of the statute—§§ 923(d)(1)(C)–(D)—had uniformly been interpreted by lower courts to require knowledge of the law; petitioner argues that Congress intended that "willfully" should have the same meaning in § 924(a)(1)(D). As an initial matter, the lower courts had come to no such agreement. While some courts had stated that willfulness in § 923(d)(1) is satis-

---

n. 4, *supra;* see also *United States* v. *Andrade,* 135 F. 3d 104, 108–109 (CA1 1998).

[24] For example, Representative Hughes, a staunch opponent of the bill, stated that the willfulness requirement would "make it next to impossible to convict dealers, particularly those who engage in business without acquiring a license, because the prosecution would have to show that the dealer was personally aware of every detail of the law, and that he made a conscious decision to violate the law." 132 Cong. Rec. 6875 (1986). Even petitioner's *amicus* acknowledges that this statement was "undoubtedly an exaggeration." Brief for National Association of Criminal Defense Lawyers as *Amicus Curiae* 14.

[25] See also *Andrade,* 135 F. 3d, at 108–109.

fied by a disregard of a known legal obligation,[26] willful was also interpreted variously to refer to "purposeful, intentional conduct,"[27] "indifferen[ce] to the requirements of the law,"[28] or merely a "conscious, intentional, deliberate, voluntary decision."[29] Moreover, in each of the cases in which disregard of a known legal obligation was held to be sufficient to establish willfulness, it was perfectly clear from the record that the licensee had knowledge of the law;[30] thus, while these

---

[26] See, e. g., Perri v. Department of the Treasury, 637 F. 2d 1332, 1336 (CA9 1981); Stein's Inc. v. Blumenthal, 649 F. 2d 463, 467–468 (CA7 1980).

[27] Rich v. United States, 383 F. Supp. 797, 800 (SD Ohio 1974).

[28] Lewin v. Blumenthal, 590 F. 2d 268, 269 (CA8 1979); Fin & Feather Sport Shop v. United States Treasury Department, 481 F. Supp. 800, 807 (Neb. 1979).

[29] Prino v. Simon, 606 F. 2d 449, 451 (CA4 1979) (internal quotation marks omitted); see also Stein's, 649 F. 2d, at 467 ("[I]f a person 1) intentionally does an act which is prohibited, irrespective of evil motive or reliance on erroneous advice, or 2) acts with careless disregard of statutory requirements, the violation is willful" (internal quotation marks omitted)).

[30] Perri, 637 F. 2d, at 1336 ("The district court found Perri knew a strawman transaction would violate the Act"); Stein's, 649 F. 2d, at 468 ("The record shows that the plaintiff's agents were instructed on the requirements of the law and acknowledged an understanding of the Secretary's regulations. Nevertheless, and despite repeated warnings from the Secretary, violations continued to occur" (footnote omitted)); Powers v. Bureau of Alcohol, Tobacco and Firearms, 505 F. Supp. 695, 698 (ND Fla. 1980) ("Bureau representatives inspected Powers August 31, 1976. They pointed out his many violations, gave him a copy of the regulations, thoroughly explained his obligations, and gave him a pamphlet explaining his obligations. As of that date Powers knew his obligations"); Shyda v. Director, Bureau of Alcohol, Tobacco and Firearms, 448 F. Supp. 409, 415 (MD Pa. 1977) ("[A]t the formal administrative hearing petitioner admitted on the stand under oath that he was aware of the specific legal obligation at issue"); Mayesh v. Schultz, 58 F. R. D. 537, 540 (SD Ill. 1973) ("The uncontroverted evidence shows clearly that plaintiff was aware of the above holding period requirements. Mr. Mayesh had been previously advised on the requirements under Illinois law, and he clearly acknowledged that he was aware of them"); McLemore v. United States Treasury Department, 317 F. Supp. 1077, 1078 (ND Fla. 1970) (finding that both

cases support the notion that disregard of a known legal obligation is sufficient to establish a willful violation, they in no way stand for the proposition that it is required.[31]

Finally, petitioner argues that § 922(b)(3), which is governed by § 924(a)(1)(D)'s willfulness standard, indicates that Congress intended "willfully" to include knowledge of the law. Section 922(b)(3) prohibits licensees from selling firearms to any person who the licensee knows or has reasonable cause to believe does not reside in the licensee's State, except where, *inter alia,* the transaction fully complies with the laws of both the seller's and buyer's State. The subsection further states that the licensee "shall be presumed, . . . in the absence of evidence to the contrary, to have had actual knowledge of the State laws and published ordinances of both States."[32] Although petitioner argues that the presumption in § 922(b)(3) indicates that Congress intended willfulness to require knowledge of the law for all offenses covered by § 924(a)(1)(D), petitioner is mistaken. As noted above, while disregard of a known legal obligation is cer-

---

the owner of the pawnshop, as well as his employees, had knowledge of the law).

[31] In *Mayesh,* for example, the court stated:

"The uncontroverted evidence shows clearly that plaintiff was aware of the above holding period requirements. Mr. Mayesh had been previously advised on the requirements under Illinois law, and he clearly acknowledged that he was aware of them. . . . Since the material facts are undisputed, as a matter of law the plaintiff clearly and knowingly violated the Illinois holding provisions . . . , and hence, 18 U. S. C. § 922(b)(2). This court can only consider such action to have been 'wilful' as a matter of law. There is no basis for trial of any disputed facts in this connection. This is sufficient to justify refusal of license renewal." 58 F. R. D., at 540.

See also, *e. g., Perri,* 637 F. 2d, at 1336 (stating that when a dealer understands the requirements of the law, but knowingly fails to follow them or is indifferent to them, willfulness "is established," *i. e.,* is satisfied); *Stein's,* 649 F. 2d, at 468 ("Evidence of repeated violations with knowledge of the law's requirements has been held *sufficient* to establish willfulness" (emphasis added)); *McLemore,* 317 F. Supp., at 1078–1079.

[32] 18 U. S. C. § 922(b)(3).

tainly sufficient to establish a willful violation, it is not necessary—and nothing in § 922(b)(3) contradicts this basic distinction.[33]

## V

One sentence in the trial court's instructions to the jury, read by itself, contained a misstatement of the law. In a portion of the instructions that were given after the correct statement that we have already quoted, the judge stated: "In this case, the government is not required to prove that the defendant knew that a license was required, *nor is the government required to prove that he had knowledge that he was breaking the law.*" App. 19 (emphasis added). If the judge had added the words "that required a license," the sentence would have been accurate, but as given it was not.

Nevertheless, that error does not provide a basis for reversal for four reasons. First, petitioner did not object to that sentence, except insofar as he had argued that the jury should have been instructed that the Government had the burden of proving that he had knowledge of the federal licensing requirement. Second, in the context of the entire instructions, it seems unlikely that the jury was misled. See, *e. g., United States* v. *Park,* 421 U. S. 658, 674–675 (1975). Third, petitioner failed to raise this argument in the Court of Appeals. Finally, our grant of certiorari was limited to

---

[33] Petitioner also argues that the statutory language—"willfully violates any other provision of this chapter"—indicates a congressional intent to attach liability only when a defendant possesses specific knowledge of the "provision[s] of [the] chapter." We rejected a similar argument in *United States* v. *International Minerals & Chemical Corp.,* 402 U. S. 558 (1971). Although that case involved the word "knowingly" (in the phrase "knowingly violates any such regulation"), the response is the same:

"We . . . see no reason why the word 'regulations' [or the phrase 'any other provision of this chapter'] should not be construed as a shorthand designation for specific acts or omissions which violate the Act. The Act, so viewed, does not signal an exception to the rule that ignorance of the law is no excuse . . . ." *Id.,* at 562.

the narrow legal question whether knowledge of the licensing requirement is an essential element of the offense.

Accordingly, the judgment of the Court of Appeals is affirmed.

*It is so ordered.*

JUSTICE SOUTER, concurring.

I join in the Court's opinion with the caveat that if petitioner had raised and preserved a specific objection to the erroneous statement in the jury instructions, see Part V, *ante*, at 199 and this page, I would vote to vacate the conviction.

JUSTICE SCALIA, with whom THE CHIEF JUSTICE and JUSTICE GINSBURG join, dissenting.

Petitioner Sillasse Bryan was convicted of "willfully" violating the federal licensing requirement for firearms dealers. The jury apparently found, and the evidence clearly shows, that Bryan was aware in a general way that some aspect of his conduct was unlawful. See *ante*, at 189, and n. 8. The issue is whether that general knowledge of illegality is enough to sustain the conviction, or whether a "willful" violation of the licensing provision requires proof that the defendant knew that his conduct was unlawful specifically because he lacked the necessary license. On that point the statute is, in my view, genuinely ambiguous. Most of the Court's opinion is devoted to confirming half of that ambiguity by refuting Bryan's various arguments that the statute clearly requires specific knowledge of the licensing requirement. *Ante*, at 192–199. The Court offers no real justification for its implicit conclusion that either (1) the statute unambiguously requires only general knowledge of illegality, or (2) ambiguously requiring only general knowledge is enough. Instead, the Court curiously falls back on "the traditional rule that ignorance of the law is no excuse" to conclude that "knowledge that the conduct is unlawful is all that is required." *Ante*, at 196. In my view, this case calls for the application of a different canon—"the familiar rule that, 'where there is

ambiguity in a criminal statute, doubts are resolved in favor of the defendant.'" *Adamo Wrecking Co.* v. *United States,* 434 U. S. 275, 284–285 (1978), quoting *United States* v. *Bass,* 404 U. S. 336, 348 (1971).

Title 18 U. S. C. § 922(a)(1)(A) makes it unlawful for any person to engage in the business of dealing in firearms without a federal license. That provision is enforced criminally through § 924(a)(1)(D), which imposes criminal penalties on whoever "willfully violates any other provision of this chapter." The word "willfully" has a wide range of meanings, and "'its construction [is] often . . . influenced by its context.'" *Ratzlaf* v. *United States,* 510 U. S. 135, 141 (1994), quoting *Spies* v. *United States,* 317 U. S. 492, 497 (1943). In some contexts it connotes nothing more than "an act which is intentional, or knowing, or voluntary, as distinguished from accidental." *United States* v. *Murdock,* 290 U. S. 389, 394 (1933). In the present context, however, inasmuch as the preceding three subparagraphs of § 924 specify a *mens rea* of "knowingly" for *other* firearms offenses, see §§ 924(a)(1)(A)–(C), a "willful" violation under § 924(a)(1)(D) must require some mental state more culpable than mere intent to perform the forbidden act. The United States concedes (and the Court apparently agrees) that the violation is not "willful" unless the defendant knows in a general way that his conduct is unlawful. Brief for United States 7–9; *ante,* at 193 ("The jury must find that the defendant acted with an evil-meaning mind, that is to say, that he acted with knowledge that his conduct was unlawful").

That concession takes this case beyond any useful application of the maxim that ignorance of the law is no excuse. Everyone agrees that § 924(a)(1)(D) requires some knowledge of the law; the only real question is *which* law? The Court's answer is that knowledge of *any* law is enough—or, put another way, that the defendant must be ignorant of *every* law violated by his course of conduct to be innocent of willfully violating the licensing requirement. The Court points to no

textual basis for that conclusion other than the notoriously malleable word "willfully" itself. Instead, it seems to fall back on a presumption (apparently derived from the rule that ignorance of the law is no excuse) that even where ignorance of the law *is* an excuse, that excuse should be construed as narrowly as the statutory language permits.

I do not believe that the Court's approach makes sense of the statute that Congress enacted. I have no quarrel with the Court's assertion that "willfully" in § 924(a)(1)(D) requires only "general" knowledge of illegality—in the sense that the defendant need not be able to recite chapter and verse from Title 18 of the United States Code. It is enough, in my view, if the defendant is generally aware that the *actus reus* punished by the statute—dealing in firearms without a license—is illegal. But the Court is willing to accept a *mens rea* so "general" that it is entirely divorced from the *actus reus* this statute was enacted to punish. That approach turns § 924(a)(1)(D) into a strange and unlikely creature. Bryan would be guilty of "willfully" dealing in firearms without a federal license even if, for example, he had never heard of the licensing requirement but was aware that he had violated the law by using straw purchasers or filing the serial numbers off the pistols. *Ante,* at 189, n. 8. The Court does not even limit (for there is no rational basis to limit) the universe of relevant laws to federal *firearms* statutes. Bryan would also be "act[ing] with an evil-meaning mind," and hence presumably be guilty of "willfully" dealing in firearms without a license, if he knew that his street-corner transactions violated New York City's business licensing or sales tax ordinances. (For that matter, it ought to suffice if Bryan knew that the car out of which he sold the guns was illegally double-parked, or if, in order to meet the appointed time for the sale, he intentionally violated Pennsylvania's speed limit on the drive back from the gun purchase in Ohio.) Once we stop focusing on the conduct the defendant is actually charged with (*i. e.,* selling guns without

a license), I see no principled way to determine *what* law the defendant must be conscious of violating. See, *e. g., Lewis v. United States,* 523 U. S. 155, 174–175 (1998) (SCALIA, J., concurring in judgment) (pointing out a similar interpretive problem potentially raised by the Assimilative Crimes Act).

Congress is free, of course, to make criminal liability under one statute turn on knowledge of another, to use its firearms dealer statutes to encourage compliance with New York City's tax collection efforts, and to put judges and juries through the kind of mental gymnastics described above. But these are strange results, and I would not lightly assume that Congress intended to make liability under a federal criminal statute depend so heavily upon the vagaries of local law—particularly local law dealing with completely unrelated subjects. If we must have a presumption in cases like this one, I think it would be more reasonable to presume that, when Congress makes ignorance of the law a defense to a criminal prohibition, it ordinarily means ignorance of the unlawfulness of the specific conduct punished *by that criminal prohibition.*

That is the meaning we have given the word "willfully" in other contexts where we have concluded it requires knowledge of the law. See, *e. g., Ratzlaf, supra,* at 149 ("To convict Ratzlaf of the crime with which he was charged, . . . the jury had to find he knew the structuring in which he engaged was unlawful"); *Cheek* v. *United States,* 498 U. S. 192, 201 (1991) ("[T]he standard for the statutory willfulness requirement is the 'voluntary, intentional violation of a known legal duty.' . . . [T]he issue is whether the defendant knew of the duty purportedly imposed by the provision of the statute or regulation he is accused of violating"). The Court explains these cases on the ground that they involved "highly technical statutes that presented the danger of ensnaring individuals engaged in apparently innocent conduct." *Ante,* at 194. That is no explanation at all. The complexity of the tax and currency laws may explain why the Court interpreted

"willful" to require some awareness of illegality, as opposed to merely "an act which is intentional, or knowing, or voluntary, as distinguished from accidental." *Murdock*, 290 U. S., at 394. But it *in no way* justifies the distinction the Court seeks to draw today between knowledge of the law the defendant is actually charged with violating and knowledge of *any* law the defendant could conceivably be charged with violating. To protect the pure of heart, it is not necessary to forgive someone whose surreptitious laundering of drug money violates, unbeknownst to him, a technical currency statute. There, as here, regardless of how "complex" the violated statute may be, the defendant would have acted "with an evil-meaning mind."

It seems to me likely that Congress had a presumption of offense-specific knowledge of illegality in mind when it enacted the provision here at issue. Another section of the Firearms Owners' Protection Act, Pub. L. 99–308, 100 Stat. 449, prohibits licensed dealers from selling firearms to out-of-state residents unless they fully comply with the laws of both States. 18 U. S. C. § 922(b)(3). The provision goes on to state that all·licensed dealers "shall be presumed, for purposes of this subparagraph, in the absence of evidence to the contrary, to have had actual knowledge of the State laws and published ordinances of both States." *Ibid.* Like the dealer-licensing provision at issue here, a violation of § 922(b)(3) is a criminal offense only if committed "willfully" within the meaning of § 924(a)(1)(D). The Court is quite correct that this provision does not establish beyond doubt that "willfully" requires knowledge of the particular prohibitions violated: the fact that knowledge (attributed knowledge) of those prohibitions will be *sufficient* does not demonstrate conclusively that knowledge of *other* prohibitions will *not* be sufficient. *Ante,* at 198–199. But though it does not *demonstrate*, it certainly *suggests*. To say that only willful violation of a certain law is criminal, but that knowledge of the existence of that law is presumed, fairly reflects, I think, a

presumption that willful violation requires knowledge of the law violated.

If one had to choose, therefore, I think a presumption of statutory intent that is the opposite of the one the Court applies would be more reasonable. I would not, however, decide this case on the basis of any presumption at all. It is common ground that the statutory context here requires some awareness of the law for a § 924(a)(1)(D) conviction, but the statute is simply ambiguous, or silent, as to the precise contours of that *mens rea* requirement. In the face of that ambiguity, I would invoke the rule that " 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity,' " *United States* v. *Bass*, 404 U. S., at 347, quoting *Rewis* v. *United States*, 401 U. S. 808, 812 (1971).

> "The rule that penal laws are to be construed strictly, is, perhaps, not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department." *United States* v. *Wiltberger*, 5 Wheat. 76, 95 (1820).

In our era of multiplying new federal crimes, there is more reason than ever to give this ancient canon of construction consistent application: by fostering uniformity in the interpretation of criminal statutes, it will reduce the occasions on which this Court will have to produce judicial havoc by resolving in defendants' favor a Circuit conflict regarding the substantive elements of a federal crime, see, *e. g., Bousley* v. *United States*, 523 U. S. 614 (1998).

I respectfully dissent.