CLAY, Circuit Judge,
concurring.
I concur in the majority opinion, but write separately to clarify the standard for determining whether a licensed firearms dealer has committed a “willful” violation of 18 U.S.C. § 923(e). Citing this Court’s unpublished decision in Al’s Jewelry & Loan, Inc. v. U.S. Dep’t of Treasury, Bureau of Alcohol, Tobacco & Firearms, No. 95-1765, 1996 WL 683528 (6th Cir. Nov.22, 1996), the district court held that a “willful” violation “requires evidence that Petitioner knew of its obligation not to sell to underage person [sic] and evidence of repeated violations of that obligation.” The district court gleaned this rule from Al’s Jewelry’s citation to Al’s Loan Office, Inc. v. U.S. Dep’t of the Treasury, 738 F.Supp. 221, 224 (E.D.Mich.1990), which noted, “Courts uniformly hold that where, as here, a licensee understood his legal obligations for record keeping, but repeatedly failed to abide by these obligations, his license can be properly denied or revoked pursuant to 18 U.S.C. § 923(e) on the ground that he willfully violated the record keeping requirements of the Gun Control Act.” Contrary to the district court’s interpretation, however, the Al’s Jewelry decision did not cite AVs Loan Office for the proposition that a willful violation requires a showing of repeated violations, but only as one example, among many, of federal court decisions upholding the ATF’s revocation of firearms licenses from dealers who have willfully violated the federal gun control laws.
Nevertheless, Al’s Jewelry remains instructive because it cited with approval three published decisions from outside the Sixth Circuit that define willfulness under the Act. See Al’s Jewelry, 1996 WL 683528, at *4 (citing Cucchiara v. Sec’y of the Treasury, 652 F.2d 28, 29 (9th Cir.1981); Prino v. Simon, 606 F.2d 449, 451 (4th Cir.1979); Lewin v. Blumenthal, 590 F.2d 268, 269 (8th Cir.1979)). These decisions all hold that a willful violation requires proof that the petitioner both knew of his legal obligation under the Gun Control Act and purposefully disregarded or was plainly indifferent to that obligation. Cuchiara, 652 F.2d at 30; Prino, 606 F.2d at 451; Lewis, 590 F.2d at 269; see also Perri v. U.S. Dep’t of Treasury, Bureau of Alcohol, Tobacco & Firearms, 637 F.2d 1332, 1336 (9th Cir.1981); Stein’s, Inc. v. Blumenthal, 649 F.2d 463, 467 (7th Cir. 1980); 3 Bridges, Inc. v. United States, 216 F.Supp.2d 655, 657-58 (E.D.Ky.2002). Consistent with this standard, the Supreme Court has held that evidence showing “knowledge that the conduct is unlawful is all that is required” to prove a willful violation of the Gun Control Act and has noted that “disregard of a known legal obligation [under the Act] is certainly sufficient to establish a willful violation.” Bryan v. United States, 524 U.S. 184, 196 and 198-99, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998).
It is clear from the following facts that appellant (1) knew of the Gun Control Act’s prohibition against selling handgun ammunition to a buyer whom the dealer knows or has reasonable cause to believe is younger than age 21, 18 U.S.C. § 922(b)(1), and (2) demonstrated purposeful disregard or plain indifference to that prohibition:
•Appellant sold handgun ammunition to an individual under the age of 21 (Aaron Rains).
•At the time of the sale, appellant knew that selling handgun ammunition to an individual under age 21 would be illegal. •The K-Mart store clerk who had seen Rains on the day of the sale testified *468 that Rains appeared to be as young as 16 and, therefore, the clerk opined that he would have requested proof of age before selling handgun ammunition to Rains.
•Recent photographs of Rains “clearly suggest that he was less than 21 years of age” at the time of the purchase. •Appellant had a “laissez faire type of approach” to selling firearms and ammunition, as evidenced by (a) appellant’s sales policy (“if we have it and they have the money, we sell it”) and (b) appellant’s practice of determining the age of purchasers through only “casual observation.”
Although appellant disagrees with the district court’s findings on some of the disputed factual issues, this Court must find clear error in order to reverse. I agree with the majority that there is no basis to reverse the district court’s findings under this deferential standard of review.