**UNITED STATES of America,**

v.

**Francis J. HOLTZHAUER.**

**No. 2:05–cr–170.**

United States District Court,
S.D. Ohio,
Eastern Division.

Nov. 21, 2006.

Daniel Allen Brown, United States Attorney's Office, Columbus, OH, for United States of America.

## Decision

ABEL, United States Magistrate Judge.

Defendant Francis J. Holtzhauer is accused of bringing a gun into an airport security area in violation 49 U.S.C. § 46314(a). On October 11, 2006, a trial to the Court occurred in this matter.

## I. Finding of Facts

On July 11, 2005, defendant Francis J. Holtzhauer entered an area of the Port Columbus International Airport serving air carriers. He had in his possession a green garment bag and a brown, soft leather briefcase. A loaded Kel Tec 32–caliber pistol was in the briefcase. When the briefcase went through the x-ray screening device, TSA security screener Yolanda White saw an object she thought might be a gun. She re-ran the briefcase through the machine. Holtzhauer passed through the magnetometer and was waiting for his carry-on luggage. When he saw the screener re-run the briefcase through the x-ray machine, Holtzhauer said, "Oh my God, I left the gun in the briefcase."

Holtzhauer told White that the bag was his. White called her supervisor, who summoned the Columbus Regional Airport Authority police. Holtzhauer told the screeners and the police that there was a loaded gun inside his briefcase. Police officer Stephen Lawson asked where the gun was located inside the briefcase. Holtzhauer told him that it was in a zippered compartment.

The Kel Tec 32–caliber semi-automatic pistol weighed 6.6 ounces, unloaded. A magazine weighs 2.8 ounces. The gun and two magazines were in a blue bag that was zipped shut and locked with a small luggage combination lock.

Holtzhauer was cooperative with the officers. He told them that he knew he could not carry a firearm on board a commercial aircraft. Holtzhauer explained the circumstances that resulted in his forgetting that the firearm was in his briefcase. He told the officers the same version of events that he testified to at trial.

Holtzhauer is 57 years old. He holds a BS in biological science and both a masters and doctorate in preventive medicine. His work experience includes seven years as an epidemiologist for the Ohio Department of Health, 13 years as an Assistant Health Commissioner for the Columbus Health Department, and three years as a Deputy Director of the Ohio Department of Health. He is currently a clinical associate professor of health at the Ohio State University. One of his primary duties is to prepare educational material for and train health care professionals to be first responders in the event of a terrorist biological attack.

Holtzhauer has had a lifelong interest in guns and in law enforcement. He has had more than 300 hours of law enforcement training. In high school, he was on the varsity rifle team. At the University of Dayton, he was a member of the ROTC rifle team. He has had a significant amount of training in firearms. He is a certified instructor and range safety officer. He volunteers to work with the Ohio State University pistol club, and he shoots on the Ohio State University intramural pistol club. He competes with the Inter-

national Defensive Pistol Association and the Practical Pistol Association. He has been involved with a Steel Plate Shooting group. From time to time, he has done trap and sporting clay shooting. Holtzhauer is a vintage military weapons restorer. He has occasionally shot black powder. He currently owns 57 firearms.

After college, Holtzhauer applied for a position as, and was accepted to be, an FBI special agent. However, he ended up not taking the position at the last moment because his wife objected. He did, however, work 8–10 hours a week as a police officer for a number of years. After 9/11, Holtzhauer volunteered to become a member of Ohio's military reserve. He was commissioned as a second lieutenant and later was promoted to first lieutenant. But a severe back impairment forced him to resign after 14 months.

Holtzhauer suffers from two medical impairments that played a role in his arriving at the airport with the Kel Tec pistol in his briefcase. Since he was 21 years old, Holtzhauer has suffered from irritable bowel syndrome. Over the years, he has learned to manage the condition fairly well. But he does suffer flareups.

In 2003, Holtzhauer underwent a spinal fusion at multiple levels of his lower lumbar spine. It took him a long time to recover from the surgery. He cannot lift more than 30 pounds; and he has to be careful how he lifts.

On the afternoon of July 8, 2005, Holtzhauer taught a four-hour class to a group of 40 health care professionals who were just beginning to pursue a Masters of Public Health degree. The class ended at 6 p.m., and Holtzhauer did some additional work and left for home at 6:30 p.m. He and his wife had plans to spend the weekend visiting their friends, the Capwells, at their Huron, Ohio vacation home on Lake Erie.

Because they were late, they packed hurriedly for the trip. Holtzhauer's wife had placed his Black Range bag, which contained a pistol for target practice, in their Ford Expedition truck. It was raining hard, and they had difficulty packing the truck. After several failed attempts to secure their bicycles to the roof of the truck, they stowed them inside the truck in the rear.

As was his custom, Holtzhauer decided to take his Kel Tec pistol, which he carries for personal protection. He is licensed to carry a firearm under Ohio's concealed carry law. He does not carry it during his work week at the Ohio State University. He does frequently carry it when he goes out in the evening to the bank or a store; and he takes it with him on trips within the state of Ohio.

Holtzhauer retrieved the Kel Tec pistol from a high shelf in his bedroom where he normally stores it. He keeps the pistol in a blue, zippered bag. The zipper is locked with a small, combination luggage lock. He placed the bag in the back of the truck with the bicycles and other luggage.

They were running about an hour behind schedule, so he skipped eating. He did eat something in the car during the trip. They got to the Capwells in Huron at 9:30–10:00 p.m. It was still raining, and Holtzhauer pulled the truck up close to the Capwells' front porch to unload it.

Holtzhauer put the locked blue bag containing the Kel Tec pistol in an inside zippered compartment of his briefcase for safekeeping. He kept his checkbook and other, similar important items in the same zippered compartment. Holtzhauer had brought his briefcase with him because he and Ellen Capwell were working together writing educational materials, and he thought they might do a little work that weekend. He took the briefcase to his bedroom.

Saturday morning Holtzhauer was not feeling well. He experienced significant gastrointestinal problems. He was in the bathroom a lot during the course of the weekend. He attempted to go target shooting with Mark Capwell. He shot a target pistol, not the Kel Tec, which remained in his briefcase throughout the weekend. Holtzhauer's gastrointestinal problems forced him to quit after about 20 minutes. On Sunday, he was still not feeling well so he delayed their departure for home until about 6 p.m.

Holtzhauer and his wife got home late. He put his briefcase on a chair in the dining room where he normally kept it so it would be easy to retrieve on his way to his car. Holtzhauer took medication for his intestinal problems, then his wife helped him pack for a trip the next morning to Boston for a bioterrorism conference. He packed a green garment bag, which he would carry onto the plane. It was the only bag he intended to take.

The next morning, Holtzhauer got up around 5 a.m. He had still not been feeling well through the night. After showering and dressing, Holtzhauer picked up the green garment bag on his way out of the house. Although it did not weigh 30 pounds, it was too heavy for him to carry with one arm. He felt unbalanced. So he took a thick stack of contract documents, several journals, and a bottle of water out of the garment bag and stuck them in his briefcase. The weight of the items he intended to carry on to the plane was now better balanced, because he could carry the garment bag in one hand and his briefcase in the other.

Holtzhauer got to the airport in time to go through security at around 7 a.m. He did not remember that the Kel Tec pistol was in his briefcase. Had he done so before he went through security, he would have had plenty of time to return to his car in the longterm parking lot to store the gun before his flight took off at 8:05 a.m. Holtzhauer had no reason to take the pistol with him on the trip to Boston. He simply forgot under the stress of the trip to Huron, his weekend-long bout of gastrointestinal distress, his lack of sleep, the early hour, and his hurried re-packing of some items from the green garment bag into his briefcase.

## II. Conclusions of Law

Defendant Holtzhauer is accused of violating 49 U.S.C. § 46314(a), which states that a "person may not knowingly and willfully enter, in violation of security requirements prescribed under section 44901, 44903(b) or (c), or 44906 of this title [49 USCS § 44901, 44903(b) or (c), or 44906], an aircraft or an airport area that serves an air carrier or foreign air carrier." In a prior order, this Court stated that "the correct interpretation of 49 U.S.C. § 46314(a) is that 'knowingly' and 'willfully' modifies the term 'enter' as well as the phrase 'in violation of the security requirements.'" The issue that remains to be resolved in this case is how the terms "wilfully" and "knowingly" are defined in regards to 49 U.S.C. § 46314(a). On November 1, 2006, counsel for the prosecution and defense submitted briefs outlining their proposed findings of fact and conclusions of law that spoke to these issues.

### A. Wilfully

In their respective briefs, both the prosecution and the defense submit various definitions of "willfully" in their attempts to delineate a standard of review in this case. The prosecution acknowledges that "willfully" "generally connotes an act undertaken with a bad purpose." However, the prosecution also argues that Supreme Court precedent holds that a "disregard of a known legal obligation is sufficient to establish a willful violation." *Bryan v.*

*United States,* 524 U.S. 184, 197–98, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998).

The defendant acknowledges that the Sixth Circuit, in a federal wire-tapping case, has held that "a defendant acts willfully for the purposes of this statute if he knowingly or recklessly disregards a known legal duty." *Farroni v. Farroni,* 862 F.2d 109, 112 (6th Cir.1988). However, the defendant also cites language by the Sixth Circuit from a draft evasion case which defines "willfully" as when a person acts "voluntarily and purposely with a specific intent to do that which the law forbids; that is to say, with bad purpose to enter or disobey or disregard the law." *United States v. Krosky,* 418 F.2d 65, 67 (6th Cir.1969). Thus, the defendant claims that the government must show beyond a reasonable doubt that he was aware he was in possession of the gun at the time he entered the airport security area.

[1, 2] The Supreme Court and the Sixth Circuit have construed the term "willfully" to include a reckless disregard of a known legal duty. *See Bryan* 524 U.S. at 197–98, 118 S.Ct. 1939; *Farroni,* 862 F.2d at 112. Thus, this is the standard this Court will use to decide whether the defendant "willfully" entered the airport security area in violation of the statute. Defendant Holtzhauer knew that guns were not permitted in the airport. He saw the several signs posted at various points in the airport which described firearms as prohibited objects. As a person who has engaged in many hours of safety training, the defendant is aware that guns must be carefully handled. However, the defendant, harried by the stresses of travel, did not act carefully with respect to his weapon. In fact, he had "totally forgotten" that the gun was in his briefcase. By carelessly disregarding the whereabouts of his deadly weapon and by subsequently bringing it into an airport security area despite posted warnings, the defendant recklessly disregarded a known legal duty. Thus, this Court finds beyond a reasonable doubt that the Defendant "willfully" entered in the security area in violation of the statute.

## B. Knowingly

In their respective briefs, both the prosecution and the defense submit various definitions of "knowingly" in their attempts to delineate a standard of review in this case. The government states that the focus of "knowingly" is "on a defendant's knowledge of facts, and not the law, that makes his conduct illegal." The prosecution further argues that even if a person does not have actual knowledge of the facts which make his conduct illegal, he can still be held to be "knowing" if his conduct constitutes willful blindness. The prosecution cites a Third Circuit case for the proposition that willful blindness occurs when the defendant "deliberately closes his eyes to what otherwise would have been obvious to him concerning the fact in question." *United States v. Stewart,* 185 F.3d 112, 126 (3d Cir.1999). However, as the prosecution points out, the Third Circuit also noted that "willful blindness is not to be equated with negligence or lack of care, and does not allow a conviction simply because the defendant 'should have known of facts of which he or she was unaware.'" *United States v. Wert–Ruiz,* 228 F.3d 250, 255(3d Cir.2000).

Defendant cites the Seventh Circuit for the proposition that "knowingly" means that "defendant realized what he was doing and was aware of the nature of his conduct and did not act through ignorance, mistake, or accident." ¶ 4.06. The defendant states that he cannot have "knowingly" entered the airport security area in violation of the statute because he did not realize that he was in possession of his gun at the time he entered. Thus, the defen-

dant argues that the prosecution has failed to prove beyond a reasonable doubt that he "knowingly" violated the statute at issue.

 Even using the prosecution's "willful blindness" standard as opposed to the "actual knowledge" standard cited by the defendant, the prosecution has still failed to carry its burden. The facts show that the defendant never deliberately closed his eyes to the fact he had his gun when he entered the airport security area. He simply forgot. This is not to say that his behavior was not reckless or that he should not have been aware of his possession of a gun. However, the facts show that the defendant's behavior simply does not rise to the level of willful blindness. Thus, the government has failed to establish, beyond a reasonable doubt, that Defendant knowingly violated the statute at issue. Further, the statute states that "person may not knowingly *and* willfully enter" the proscribed areas. 49 U.S.C. § 46314(a)(emphasis added). The use of "and" shows that Congress intended that the government show that a person both "willfully" and "knowingly" violated the statute. As the prosecution has failed to meet its burden of proof as to the "knowingly" requirement, the defendant is found not guilty of violating 49 U.S.C. § 46314(a).