**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                   No. 99-4562

ROBERT C. HENDRICKS,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                   No. 99-4563

JOYCE E. PERDUE, a/k/a Pastor Joyce,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                   No. 99-4564

ELIZABETH BROWN,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CR-98-515-MJG)

Argued: January 28, 2000

Decided: April 3, 2000

Before WILKINSON, Chief Judge, and MICHAEL
and TRAXLER, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Thomas Leonard Crowe, Baltimore, Maryland; Richard Douglas Bennett, MILES & STOCKBRIDGE, Baltimore, Maryland, for Appellants. Bonnie S. Greenberg, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Byron L. Warnken, LAW OFFICES OF BONNIE L. WARNKEN, Baltimore, Maryland, for Appellant Perdue. Lynne A. Battaglia, United States Attorney, Gregory Welsh, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Defendants Joyce Perdue, Robert Hendricks, and Elizabeth Brown were indicted for conspiracy to commit visa and immigration fraud by operating a scheme whereby Estonian immigrants came to work in the United States. The government filed a motion in limine to prevent defendants from presenting evidence that they did not believe that the immigrants' activities in the United States constituted "work" by virtue of their religious beliefs. The district court granted the motion. Defendants subsequently entered into plea agreements reserving the right to appeal this ruling. We now vacate the district court's ruling and remand this case for consideration in light of the relevant precedents, particularly our decision in United States v. Oloyede, 982 F.2d 133 (4th Cir. 1992).

2

I.

A.

Defendants' plea agreements set forth a detailed statement of facts, which we briefly summarize here. In the fall of 1996, defendants advised a number of Estonian nationals that they could come to the United States to study at a bible school or work for defendants' Word of Faith World Outreach Church as religious workers. Defendants accordingly instructed seven aliens to state on their F-1 (student) visa applications that they did not intend to work while in the United States. Defendants also led five aliens to apply for R-1 (religious worker) visas to do religious work for the church. The student visas required the aliens to go to school full-time. The religious worker visas permitted the aliens to perform religious work such as translating bible studies and preparing religious print and audiovisual materials. Defendants, however, knew that the Estonians applying for student visas would not be going to school full-time. Defendants also knew that all of these Estonians would be working in such capacities as cleaning bookstores, cleaning apartments, and installing office furniture. The Estonians obtained visas and traveled to Perdue's residence in Maryland.

In addition to their involvement in the church, defendants were officers of Vision Ventures, Inc. Vision Ventures was the parent company of Alpha Cleaning Systems, a cleaning business, and Systems Installation Group, a furniture installation business. Each evening, defendants met with the Estonians and assigned them to a work crew for the following day. The Estonians typically departed for work at 6 A.M. and typically returned between 5 P.M. and 9 P.M. Defendants typically paid the Estonians between $10 and $100 per week for their services and advised them that they would have to return to Estonia if they did not work as directed. The student visa holders attended school only sporadically, and the religious workers only occasionally translated bible studies.

Defendants directed the students to change out of their work uniforms before going to school. Defendants also advised the Estonians not to tell their parents that they were working. Perdue took measures to conceal some of the aliens' ages and attempted to hide the fact that

3

the aliens were residing at her house. Defendants also filed false documents with the Immigration and Naturalization Service (INS) to allow the Estonians to remain in the United States on non-immigrant visas.

Defendants knew that the Estonians were not supposed to be working under the immigration regulations governing their visas. Defendants, however, assert that they viewed the immigrants' "work" in the United States as being different from the "work" prohibited by the regulations. Defendants claim that their view of the immigrants' activities was based on their particular religious beliefs.

B.

The government indicted Perdue, Hendricks, and Brown in December 1998 on numerous counts of visa and immigration fraud. Count One of the indictment charged that defendants conspired to commit immigration fraud in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) (1994) and visa fraud in violation of 18 U.S.C. § 1546(a) (1994). Section 1324(a)(1)(A)(iv) provides:

> Any person who encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law [shall be punished by fine and/or imprisonment].

Section 1546(a) provides:

> Whoever knowingly forges, counterfeits, alters, or falsely makes any immigrant or nonimmigrant visa . . ., or utters, uses, attempts to use, possesses, obtains, accepts, or receives any such visa . . ., knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained [shall be punished by fine and/or imprisonment].

Defendants wished to present evidence of their good faith belief that the immigrants were not performing "work" within the meaning

4

of the INS regulations in order to negate the <u>mens rea</u> required by the statutes. The government filed a motion in limine to prevent defendants from making such a defense. The government asked the district court to exclude all evidence and arguments relating to, <u>inter alia</u>, defendants' alleged belief that the immigrants' work on behalf of the church was appropriate and defendants' alleged misunderstanding of the INS regulations.

The district court granted the motion in limine. The court stated that defendants "may not present a `mistake of law' defense" and "may not present evidence or argument to the effect that they did not believe that the activities undertaken on behalf of Alpha Cleaning Services etc. did not constitute `work' by virtue of their religious beliefs." The district court also noted that"[d]efendants are not, hereby, prevented from offering any evidence at all regarding their church related activities" and that "[d]etailed evidentiary rulings will, necessarily, have to be made as issues arise in the course of trial."

Defendants subsequently entered into separate plea agreements with the government. Pursuant to these agreements, each defendant entered a conditional guilty plea under Fed. R. Crim. P. 11(a)(2), preserving their right to appeal the district court's ruling on the motion in limine. Defendants pled guilty to Count One and the government dismissed the remaining counts. Perdue was sentenced to a prison term of twenty-seven months and ordered to pay a fine and restitution. Hendricks and Brown were sentenced to twenty-four months and twelve months in prison, respectively. The district court ordered defendants to begin serving their sentences after disposition of their direct appeal.

II.

Defendants claim that they are entitled to present evidence of their good faith belief that the aliens' activities in the United States did not constitute prohibited "work" within the meaning of the INS regulations. They assert they must be allowed to present evidence of their understanding of the regulations and the nature of the Estonians' activities in order to negate the criminal intent that the penal statutes require the government to prove. The government counters that defendants' alleged misunderstanding of the INS regulations does not con-

5

stitute a valid defense and should therefore be precluded. The government claims that even if the charged offenses require specific intent, the proffered defense amounts to an impermissible "mistake of law" defense.

The record reflects, however, that neither party brought the most directly relevant case authority to the attention of the district court. Most significantly, the parties neglected to discuss United States v. Oloyede, 982 F.2d 133 (4th Cir. 1992), the only case in this circuit to have addressed directly the nature of the mens rea requirement in 8 U.S.C. § 1324(a)(1)(A)(iv).

In Oloyede, two individuals were convicted of falsifying documents for aliens' citizenship applications in violation of what is now § 1324(a)(1)(A)(iv).[1] One defendant, Clifford Cooper, was an immigration lawyer who represented Nigerians and Ethiopians in immigration proceedings before the INS. The other defendant, Oluwole Oloyede, ran an organization that assisted Nigerian aliens. Oloyede sold false employment, social security, and other documents to illegal aliens and referred the aliens to Cooper for preparation of their INS applications.

Eight of Cooper's clients -- all illegal aliens-- were arrested for submitting false documents in support of their citizenship applications. These aliens testified against Cooper and Oloyede at trial. Five of the aliens came to the United States to attend school, while the other three came to find work. Each had failed to return home after graduation or upon expiration of his or her visa, and thus could not legally remain in the United States. The aliens paid Cooper and Oloyede up to $3,500 each for completed fraudulent immigration applications. Cooper accompanied the aliens to the immigration hearings and guided them through the citizenship application process.

_____

[1] At that time the relevant statutory provision was labeled § 1324(a)(1)(D). Congress relabeled subsection (D) as subsection (A)(iv) in 1994 without making any changes to its language. The statutory provision at issue in this case is thus the same one construed by this court in Oloyede. For the sake of clarity, we refer to this provision as § 1324(a)(1)(A)(iv) both in discussing Oloyede and in addressing the instant case.

6

Cooper and Oloyede argued, among other things, that "their conduct merely assisted aliens in avoiding detection of an illegal status and did not rise to the level of `encourag[ing] an alien to reside in the United States.'" Oloyede, 982 F.2d at 136. The court rejected this argument. See id. at 136-37. It looked to the language of the statute and the history of the 1986 amendments to determine that "[t]he selling of fraudulent documents and immigration papers under these circumstances constitutes `encourages' as that word is used in the statute." Id. at 137.

In its discussion, the court stated that "the language `knowing or in reckless disregard of the fact that such residence is or will be in violation . . .' means that guilty knowledge is a material element of this offense." Id. (emphasis added). The court then noted that the evidence of the defendants' guilty knowledge was more than sufficient to support their convictions:

> In this case, the evidence was overwhelming that appellants knew that each of these aliens was illegally residing in this country. When aliens testified that they pointed out to Cooper incorrect information in their papers such as a false age, letters from employers for whom the aliens had never worked, and other "errors," Cooper told them that fabrication was necessary in order to win approval of their INS applications. Cooper knowingly instructed his clients to memorize the fictitious information because they would have to testify to it during the INS examination hearing.

Id.

We instruct the district court to reconsider the government's motion in limine in light of Oloyede's statement concerning § 1324(a)(1)(A)(iv)'s knowledge requirement. If defendants in the instant case are indeed permitted to present evidence of their understanding of the INS regulations in order to negate mens rea, it is then for the trier of fact to decide the credibility of defendants' stories for itself. Of course, "the Government need not . . . introduce any extraordinary evidence that would conclusively demonstrate [defendants'] state[s] of mind. Rather, as in any other criminal prosecution requiring mens rea, the Government may prove [knowledge] by reference to facts

7

and circumstances surrounding the case . . . ." Liparota v. United States, 471 U.S. 419, 434 (1985). The trier of fact may very well, like the trier of fact in Oloyede, conclude that the evidence demonstrates that defendants knew that the Estonian immigrants' activities constituted prohibited "work" within the meaning of the INS regulations.[2] The district court, however, must first determine the meaning of Congress' language in light of the relevant precedents.

The Supreme Court's decision in Liparota is also instructive concerning the nature of the knowledge requirement in the instant case. 471 U.S. 419. In Liparota, the Supreme Court held that the government must prove knowledge of illegality in order to show a violation of 7 U.S.C. § 2024(b)(1), the federal statute governing food stamp fraud. 471 U.S. at 433. In the course of analyzing that provision, the Court considered the meaning of a companion provision, 7 U.S.C. § 2024(c). Section 2024(c) stated that "[w]hoever presents, or causes to be presented, coupons for payment or redemption .. . knowing the same to have been received, transferred, or used in any manner in violation of [the statute] or the regulations[is subject to fine and imprisonment]." Liparota, 471 U.S. at 428 (alteration in original) (internal quotation marks omitted). The Court noted that this provision "undeniably requires a knowledge of illegality." Id. Because of the structural similarity between the language of 7 U.S.C.§ 2024(c) and the language of 8 U.S.C. § 1324(a)(1)(A)(iv), Liparota illuminates the interpretative issue in the instant case as well. See also Bryan v. United States, 524 U.S. 184, 193 n.15 (1998) (noting that the term "knowing" in Liparota "referred to knowledge of the law as well as knowledge of the relevant facts"); Liparota , 471 U.S. at 425 n.9 (discussing circumstances where "there is a legal element in the definition of the offense").

It is the responsibility of the parties to bring the relevant precedents to the attention of the district court and to focus argument on the applicable statutory language. This is especially true when the cases cited turn on precise statutory language that may vary from case to case. Cf. Liparota, 471 U.S. at 424 ("The definition of the elements

_____

[2] We note also that proof of "reckless disregard" of the fact that the immigrants entered the United States in violation of law will satisfy the statute's mens rea requirement. See 8 U.S.C. § 1324(a)(1)(A)(iv).

of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute."). The record, however, provides no evidence that either party discussed Oloyede or Liparota before the district court. The parties instead devoted much of their energy to Cheek v. United States, 498 U.S. 192 (1991), and United States v. Aguilar, 883 F.2d 662 (9th Cir. 1989). Neither of these latter cases is controlling here. Cheek expressly turns on the meaning of the word "willfully" in the context of the tax laws, 498 U.S. at 194, and Aguilar is a case from another circuit that interprets a pre-amendment version of § 1324 imposing liability on any person who "willfully or knowingly encourages or induces . . . the entry into the United States of any alien . . . not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States . . .," 883 F.2d at 671-72 n.2 (internal quotation marks omitted). While the parties discussed Liparota to some extent in their appellate briefs, the only mention of Oloyede is in a string cite in the government's brief to support a point for which the case is inapposite. The parties and the district court must now confront the language of § 1324(a)(1)(A)(iv) in light of Oloyede and Liparota.[3]

III.

We vacate the district court's ruling on the government's motion in limine and remand this case for consideration in light of the precedents discussed herein.

VACATED AND REMANDED

_____

[3] Because we remand this case to the district court based on considerations pertaining to § 1324(a)(1)(A)(iv), we need not address whether 18 U.S.C. § 1546(a) permits the proffered defense. The parties, however, should address this question before the district court on remand. In doing so, the parties should pay careful attention to the particular mens rea language of the statute -- i.e., "knowing it to . . . have been procured by means of any false claim or statement" -- and any cases interpreting this or similar mens rea language.