# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 10, 2008

Charles R. Fulbruge III
Clerk

Nos. 05-20604

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

DAVID KAY; DOUGLAS MURPHY

Defendants-Appellants

Appeals from the United States District Court
for the Southern District of Texas

ORDER ON PETITION FOR REHEARING
(Opinion October 24, 2007, 5ᵗʰ Cir. 2007 ___F.3d____)

Before HIGGINBOTHAM, BARKSDALE, and CLEMENT, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge.

I

David Kay and Douglas Murphy, executives of American Rice, Inc., were indicted for bribing Haitian officials in violation of the Foreign Corrupt Practices Act (FCPA). The district court dismissed the indictment, finding that the FCPA did not apply to Defendants' conduct. We held that the bribes alleged in the indictment could fall within the scope of the FCPA and remanded. On remand, Kay and Murphy were convicted on all counts. They appealed, and we affirmed their convictions. Defendants filed a Petition for Rehearing En Banc.

No member of the panel nor judge in regular active service of the court having requested that the court be polled on Rehearing En Banc (FED. R. APP. P. and 5th Cir. R. 35), the Petition for Rehearing En Banc is DENIED. Treating the Petition for Rehearing En Banc as a Petition for Panel Rehearing, the Petition for Panel Rehearing is also DENIED for the reasons that follow.

II

Defendants argue that the district court abused its discretion in instructing the jury on intent, urging that it gave a general intent instruction. Ultimately, labels aside, the issue reduces to the question of whether the jury was required to find that Defendants knew that their conduct was not legal. With that focus, we point to the charge and the arguments.

The jury instructions for the second element of the charge – "corruptly" – stated,

> An act is "corruptly" done if done voluntarily and intentionally, and with a bad purpose or evil motive of accomplishing either an unlawful end or result, or a lawful end or result by some unlawful method or means.[1]  The term "corruptly" is intended to connote that

---

[1] The instructions' language requiring "bad purpose" or "evil motive" suggests knowledge of unlawfulness.  See, e.g., Bryan v. United States, 524 U.S. 184, 191-92 (1998) ("As a general matter, when used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose' . . . In other words, in order to establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'" (emphasis added)); see also id. at 193 ("With respect to the . . . conduct . . . that is only criminal when done 'willfully.' . . . The jury must find that the defendant acted with an evil-meaning mind, that is to say, that he acted with knowledge that his conduct was unlawful."); Cheek v. United States, 498 U.S. 192, 200 (1991) (for the strictest level of intent in the tax context, the Supreme Court "described the term 'willfully' as connoting 'a voluntary, intentional violation of a known legal duty,' and did so with specific reference to the 'bad faith or evil intent' language" (emphasis added)).  But as indicated by Bryan and Cheek, instructions requiring knowledge of unlawfulness also typically include language specifically requiring an intent to violate the law.  According to the Fifth Circuit's pattern instructions, the historical definition of willfully "means that the act was committed voluntarily and purposely, with the

the offer, payment, and promise was intended to induce the recipient to misuse his official position.[2]

Regardless of whether the jury instruction that Defendants contest would alone be a sufficient platform requiring unlawfulness, "jury instructions are to be judged as a whole, rather than by picking isolated phrases from them."[3] When reviewing the jury's understanding of the charge, we look to the total context of the trial, with the benefit of arguments by all counsel.[4] In this case, the court's instructions as a whole and considered in the context of trial required a finding that Defendants knew that their conduct was unlawful.

In addition to the requirement of corrupt intent, the indictment made the usual charges of aiding and abetting under 18 U.S.C. § 2, which provides,

---

specific intent to do something the law forbids' that is to say, with bad purpose either to disobey or disregard the law." Fifth Circuit Pattern Jury Instructions (Criminal Cases) § 1.38 (2001). Those instructions acknowledge that "this definition is not accurate in every situation" and that "the term 'willfully' has 'defied any consistent interpretation by the courts.'" Id. (quoting United States v. Granda, 565 F.2d 922, 924 (5th Cir. 1978)). In this case, we look to the jury instructions as a whole and the context of trial to ensure that the instructions adequately conveyed a requirement that the Government must prove that Defendants knew that their conduct was not legal – "unlawfulness."

[2] Emphasis added.

[3] Hamling v. United States, 418 U.S. 87, 107-08 (1974).

[4] See, e.g., Cupp v. Naughten, 414 U.S. 141, 146-47 (1973) ("[W]e accept at the outset the well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. While this does not mean that an instruction by itself may never rise to the level of constitutional error, it does recognize that a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction." (citations omitted)).

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

In its instructions on aiding and abetting, before it instructed the jury on specific elements of the crime, the court insisted on a finding of "intent to violate the law," stating,

> [Y]ou may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense, as defined in these instructions, was committed by some person or persons and that the defendant voluntarily participated in its commission with the intent to violate the law.

The jury was also instructed, "It is further the theory of [Defendants Kay and Murphy, respectively] that [they] never acted with corrupt intent in participating in the authorization of payments to customs officials" and that the "defense[] is valid under the law."

Also key to our holding are the closing arguments of both Government and Defense counsel. The requisite intent here only requires knowledge that one is doing something unlawful, and neither side suggested to the jury that Defendants could be convicted if there was a reasonable doubt of their knowledge of the "unlawfulness" of their conduct.[5]  Kay's counsel in closing

---

[5] Compare Cheek, 498 U.S. at 199-200 ("The proliferation of statutes and regulations has sometimes made it difficult for the average citizen to know and comprehend the extent of the duties and obligations imposed by the tax laws. Congress has accordingly softened the impact of the common-law presumption by making specific intent to violate the law an element of certain federal criminal tax offenses. Thus, the Court almost 60 years ago interpreted the

argument focused on the FCPA when addressing corrupt intent and argued that Kay was unaware of the FCPA, stating,

> And I'd ask that you turn to page 17 [including the instructions on corrupt intent]. "An act is 'corruptly' done if done voluntarily and intentionally and with a bad purpose or evil motive" – full stop. Full stop. Here's where the rubber meets the road. This is what you're going to have to decide. Did the man that you saw on the witness stand, did the man that you heard about in this trial act "with a bad purpose or an evil motive of accomplishing either an unlawful end or result or a lawful end" – "by unlawful method or means?" This is more than doing something bad. This is somebody acting with a bad purpose or evil motive to accomplish something unlawful. This is somebody who wants to do something unlawful.
>
> "The term 'corruptly' is intended to connote that the offer, payment, or promise was intended to induce the recipient to misuse his official position." We don't think he acted evilly; we don't think he acted badly; we don't think he was intending to do something unlawful; and we don't think he was trying to get customs to misuse their positions. He was trying to get customs to do what customs should have done.
>
> One thing that undoubtedly will come up is David's familiarity or lack of familiarity with the statute. And, obviously, he testified that he didn't have a clue that his conduct was violative of any federal law. Where in his life, when in his life would he have become familiar with the FCPA?
>
> . . . .
>
> An interesting piece about Theriot, their star witness. Theriot, of course testified, well, he was in a meeting in Houston and they passed out a document that everybody signed and everybody signed

___

statutory term 'willfully' as used in the federal criminal tax statutes as carving out an exception to the traditional rule [that ignorance of the law is no excuse]. This special treatment of criminal tax offenses is largely due to the complexity of the tax laws.").

5

it saying, "We are not violating the FCPA, ha-ha-ha." Well, well, well. Where was that document? There are hundreds of exhibits in this case; and I didn't see that document, not Mr. Theriot's document, and no one else's document. Another obvious fabrication from Mr. Theriot offered to you in this trial.

. . . .

And, of course, they're going to imply to you that, "Well here's this document. 'FCPA,' that means David Kay must have known. That means David Kay has evil intent." Doesn't come close.[6]

The Government also focused on whether Defendants knew that they were violating the FCPA specifically, stating,

Now, the instruction on "corrupt intent" is on page 17 of your instructions. And the – what it says is before you. But what it does – what is clear is that corrupt intent has nothing to do with whether either defendant understood the FCPA, whether they had the intent to violate that law.[7]

In rebuttal, the Government further argued,

Mr. Weingarten kept – said, "How – given all you know about Mr. Kay's background, how would he know about the FCPA? How would he know that what he was doing – how would he learn about the FCPA?" Well, it's irrelevant whether he learned about the FCPA. The question is how couldn't he know that paying bribes is wrong? That, ladies and gentlemen, that's not public relations, it's not politics, it's not even legal – legalities.

If you were asked to pay a bribe and someone told you and – wouldn't you know it was wrong? And if you thought there was any possibility that it was illegal, wouldn't you check? And you heard

---

[6] Closing Argument of Reid Weingarten for David Kay.

[7] Closing Argument of Philip Urofsky for the Government.

from Mr. Kay himself he never asked anyone whether this was okay.[8]

The jury instructions on corrupt intent, looking to the instructions as a whole and the closing arguments of counsel, show that the jury did not believe that Defendants could be convicted if they did not know that they were doing something unlawful. The jury's question to the judge confirms this, indicating that the jury was unsure of whether Defendants knew that they were violating the FCPA specifically, not the law in general. The jury asked, "Can lack of knowledge of the FCPA be considered an accident or mistake?"

The defense understandably focuses on the differences underlying the gradations of intent and suggests that the opinion has offered the instruction here as satisfying both general intent and specific intent. To be clear, we return to first principles. That is, this case was tried on the basis that the Government had to prove that the Defendants knew that their actions violated the law, although they did not need to prove that they were aware of the specific provisions of the FCPA. Set in the context of trial, including the closing arguments of counsel, there was no uncertainty in the instructions regarding the Government's burden to prove that Defendants knew that their conduct was illegal. Mr. Weingarten argued forcefully and eloquently that his client could never have known the detail of the FCPA. The Government, while responding that they need not prove the specifics of the FCPA, made clear that it had to prove that Defendants knew that their conduct was illegal.

Our opinions have adequately addressed Defendants' other arguments. The Petition for Rehearing is DENIED.

---

[8] Rebuttal Argument of Philip Urofsky for the Government.